## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **BRANDY STOKES-REED,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 1:25-cv-00422-LEW** |
| | ) | |
| **NOAH NESIN, M.D., et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## RECOMMENDED DECISION AFTER PRELIMINARY REVIEW

Because the Court granted Brandy Stokes-Reed's application to proceed *in forma pauperis*, *see* ECF No. 5, her complaint (ECF No. 1) is now before me for preliminary review in accordance with 28 U.S.C. § 1915(e)(2)(B).[1] For the following reasons, I recommend that the Court dismiss Stokes-Reed's complaint.

Congress enacted the *in forma pauperis* statute to ensure meaningful access to federal courts for persons unable to pay the costs of bringing an action. *See Neitzke v. Williams*, 490 U.S. 319, 324 (1989). When a party proceeds *in forma pauperis*, however, a court must "dismiss the case at any time if" it determines that the action "is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). A complaint fails to state a claim when, taking the

---

[1] On August 22, 2025, Brandy Stokes-Reed filed a supplemental memorandum of law in support of her Complaint and motion for a preliminary injunction. ECF No. 6. On November 21, 2025, she filed a supplemental status report informing the Court regarding the progression of her complex medical condition. ECF No. 7. Although these filings do not amend the Complaint, *see* Fed. R. Civ. P. 15 (outlining the procedure for amended pleadings), I have considered their content when making this recommendation.

1

facts alleged as true, it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Liberally construing the complaint in this case, Stokes-Reed alleges that multiple health care providers have declined to prescribe her higher doses of medication that are necessary to alleviate the symptoms of her complex medical conditions. Complaint at 15. Stokes-Reed was previously receiving the necessary dosing, which stopped after the state medical licensing board took action against multiple providers who were prescribing her doses of opiate therapy that exceeded the maximum allowable dose under state law. *Id.* at 14-15. The Board's actions forced Stokes-Reed to seek alternative care. *Id.* at 15. Since then, she has been met with refusals to prescribe above the maximum dosage allowed by state law, resulting in an involuntary taper of her medication, which she alleges violated the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and her civil rights under 42 U.S.C. § 1983. Complaint at 14-24, 27-40. Stokes-Reed further alleges various state law claims consisting of violations of the Maine Human Rights Act (MHRA), medical abandonment, breach of fiduciary duty, and intentional infliction of emotional distress. *Id.* at 40-50. Finally, she seeks injunctive relief to compel the prescription of higher doses of opiate medications.[2] *Id.* 50-73.

---

[2] As discussed below, I recommend that the Court dismiss the complaint; therefore, the request for a preliminary injunction should also be denied. *See Rand v. Hanks*, No. 18-cv-1211-PB, 2019 WL 2504615, at *1 (D.N.H. May 15, 2019) (rec. dec.) ("For the reasons that follow, defendants' motion to dismiss should be granted and, as a consequence, plaintiff's motion for a preliminary injunction should be denied."), *aff'd,* 2019 WL 2503979 (June 17, 2019).

Stokes-Reed's complaint fails to state a claim for several reasons. First, individuals cannot be held liable under the ADA. *Román–Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 52 (1st Cir. 2011) ("[W]e concluded that neither the original remedial scheme nor the amendments contemplated individual liability."). The same reasoning applies under the RA because it applies only to entities receiving federal funds. *See* 29 U.S.C. § 794(a) (limiting the RA to entities receiving "Federal financial assistance"); *see also Millay ex rel. YRM v. Surry Sch. Dep't,* No. 09-cv-411-B-W, 2009 WL 5184398 at *9 (D. Me. Dec. 22, 2009) (concluding that individual defendants cannot be personally liable in damages for violations of the ADA and the RA). Therefore, the Court should dismiss the ADA and RA claims against the individual defendants.

That leaves the Schmidt Institute and St. Joseph Hospital. According to the complaint, the Schmidt Institute is a nonprofit that helps develop policies and training on controlled substances. Complaint at 12. Stokes-Reed does not allege that she ever sought services or treatment through the Institute or that it denied her access to a treatment based on her disability. Instead, Stokes-Reed alleges that the Institute developed policies that led her providers to change the care she was receiving. These allegations cannot establish a claim under the ADA or RA because Stokes-Reed never requested any action or accommodation from the Institute. *See Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009) ("In cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable

accommodation is not triggered until the plaintiff makes a specific demand for an accommodation." (cleaned up)).

Regarding St. Joseph Hospital, courts have historically been unwilling to second-guess a provider's medical judgment in ADA and RA claims. *See, e.g.*, *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 834 (11th Cir. 2017) ("The ADA and RA focus not on quality of medical care or the ultimate treatment outcomes, but on the equal opportunity to *participate* in obtaining and utilizing services."). Because the complaint asks the Court to change a provider's treatment rather than provide equal access to the treatment, it fails to state a claim under the ADA or RA against St. Joseph Hospital.[3]

Second, the complaint fails to state a claim under 42 U.S.C. § 1983 because it does not allege any state action. Section 1983 excludes "'merely private conduct, however discriminatory or wrongful.'" *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982) (quoting *Shelley v. Kraemer,* 334 U.S. 1, 13 (1948)). A plaintiff can establish state action when a defendant acts under color of state law, which requires that the defendant exercise power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941).

---

[3] The same reasoning likely applies to the MHRA claim. *Dudley v. Hannaford Bros. Co.*, 190 F. Supp. 2d 69, 73 (D. Me. 2002) ("Courts have interpreted the ADA and MHRA statutes as coextensive."). As discussed below, however, it is generally an abuse of discretion for the Court to exercise supplemental jurisdiction when all the federal questions have been dismissed. Thus, the MHRA claim should be dismissed for the same reason as the remaining state law claims. *See* discussion *infra* at 5-6.

Here, the healthcare providers lack the authority conferred by the State to establish a section 1983 claim because they were treating Stokes-Reed in compliance with, not under, the color of state law. *See Fonseca v. Kaiser Permanente Med. Ctr. Roseville*, 222 F. Supp. 3d 850, 864 (E.D. Cal. 2016) ("If the facts here were enough to show [the healthcare provider] had acted under color of law, then a private person would act under color of law every time he or she obeyed laws or regulations of his or her own accord, which cannot be."); *cf. West v. Atkins*, 487 U.S. 42, 54 (1988) ("Respondent, as a physician employed by [the State] to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury."). Therefore, the complaint fails to state a claim under section 1983. Consequently, the conspiracy claim also fails because, without an underlying violation of a protected right by a state actor, there cannot be a conspiracy under section 1983. *See Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980) ("While conspiracies may be actionable under section 1983, it is necessary that there have been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws.").

Finally, Stokes-Reed's remaining claims—violations of the MHRA, medical abandonment, breach of fiduciary duty, and intentional infliction of emotional distress—fall under state law.[4] *See* 5 M.R.S.A. §§ 4551-4634; *Santa Cruz-Bacardi v.*

---

[4] Moreover, the complaint does not allege that Stokes-Reed filed a complaint with the Maine Human Rights Commission, which is a prerequisite for recovering compensatory and punitive damages under the statute. *See* 5 M.R.S.A. § 4622 ("Limitations on attorneys' fees and damages."). Therefore, even if the Court retained supplemental jurisdiction on that count, Stokes-Reed could not recover money damages.

*Metro Pavia Hosp., Inc.*, No. 16-2455(RAM), 2019 WL 4453620, at *2 (D.P.R. Sept. 17, 2019) ("[A]ny claim of medical abandonment needs to be seen under the umbrella of medical malpractice."); *Cormier v. Funtown/Splashtown USA, Inc.*, 294 F. Supp. 2d 125, 128 (D. Me. 2003) ("The defendants' counterclaims assert state-law claims of breach of fiduciary duty."); *Rael v. Smith's Food & Drug Centers, Inc.*, 712 Fed. Appx. 802, 804 (10th Cir. 2017) ("[Plaintiff] alleged state law claim[] for intentional infliction of emotional distress."). The First Circuit has held that "when all federal claims have been dismissed, it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve 'the interests of fairness, judicial economy, convenience, and comity.'" *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) (quoting *Desjardins v. Willard*, 777 F.3d 43, 45-46 (1st Cir. 2015)). The facts in the complaint do not establish any of the exceptions to the general prohibition on retaining supplemental jurisdiction after dismissal of the federal claims. Therefore, the Court should dismiss the complaint in its entirety.

## Conclusion

For the foregoing reasons, I recommend that the Court **DISMISS** Stokes-Reed's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and **MOOT** any other pending motions.

## *<u>NOTICE</u>*

***A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen***

***(14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.***

***Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.***

Dated: November 26, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge